FISHER v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. June 23, 1915. On Motion for Rehearing, September 27, 1915.)

No. 4355.

1. INDIANS ⊂⇒33—PERMIT TO SELL CATTLE AS PERMIT TO DRIVE FROM RESERVATION—STATUTE.

Under Rev. St. § 2138 (Comp. St. 1913, § 4136), providing that every person who drives or removes, except by authority of an order lawfully issued by the Secretary of War, any cattle from the Indian country for purposes of trade, shall be punished, and under Act Cong. July 4, 1884,

⊂⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

c. 180, 23 Stat. 94, providing that, where Indians are in control of cattle purchased by the government, such cattle shall be sold to one not a member of the tribe only with the consent in writing of the agent of the tribe to which the owner belongs, where an Indian had written consent of the agent of his tribe to sell his own cattle, which he drove from the reservation, he could not be punished for driving the stock, since the decision by the tribe's agent that the Indian might sell impliedly authorized the latter to drive the cattle from the reservation.

[Ed. Note.—For other cases, see Indians, Cent. Dig. §§ 52, 59; Dec. Dig. ☜33.]

### On Motion for Rehearing.

**2. INDIANS ☜33—PERMIT TO SELL CATTLE—ISSUE CATTLE.**

Notwithstanding Act March 2, 1889, c. 405, § 17, 25 Stat. 895, repeals Act July 4, 1884, c. 180, § 1, 23 Stat. 94, providing that, where Indians are in control of cattle which have been purchased by the government, such cattle shall not be sold to any person, not a member of the tribe, except with the consent in writing of the agent of the tribe to which the owner belongs, in so far as it applies to cattle issued under the latter act, yet the act of 1884 is in force as to cattle not issued under the Act of 1889; it assuming there were cattle in the possession of Indians which had been purchased by the government, and as to such cattle the agent's permission to sell warrants the owner in driving them from the reservation.

[Ed. Note.—For other cases, see Indians, Cent. Dig. §§ 52, 59; Dec. Dig. ☜33.]

**3. INDIANS ☜38—DRIVING CATTLE FROM RESERVATION.**

In a prosecution for driving cattle from an Indian reservation, all presumptions are in favor of accused; and where accused had permission of the Indian agent to sell cattle, it cannot be presumed that such cattle were issue cattle, whose sale was forbidden by Act March 2, 1889; there being no evidence on that point.

[Ed. Note.—For other cases, see Indians, Cent. Dig. §§ 22, 64, 66; Dec. Dig. ☜38.]

In Error to the District Court of the United States for the District of South Dakota; James D. Elliott, Judge.

Albert Fisher was convicted of driving cattle from an Indian reservation, and he brings error. Judgment reversed, and defendant discharged.

Edward E. Wagner, of Sioux Falls, S. D. (George J. Danforth, of Sioux Falls, S. D., on the brief), for plaintiff in error.

Robert P. Stewart, U. S. Atty., of Deadwood, S. D. (E. W. Fiske and George Philip, Asst. U. S. Attys., both of Sioux Falls, S. D., on the brief), for the United States.

Before SANBORN and CARLAND, Circuit Judges, and LEWIS, District Judge.

CARLAND, Circuit Judge. Fisher was placed upon trial on an indictment, the first count of which was as follows:

"That Albert Fisher, late of the Pine Ridge Indian reservation, state of South Dakota, in said district, heretofore, to wit, on the 1st day of September in the year of our Lord one thousand nine hundred and twelve, with force and arms, at the Pine Ridge Indian reservation, in the state of South Dakota, in the district aforesaid, and within the exclusive jurisdiction of this court, unlawfully and feloniously did then and there drive and remove twenty head

of cattle of various ages, sizes, and sexes, an exact description of which is to the grand jurors unknown and therefore not set out in this indictment, of the value of eight hundred dollars ($800.00), of the goods, chattels, and personal property of one Albert Fisher, from the Indian country, to wit, from the said Pine Ridge Indian reservation, for the purposes of trade and commerce, without then and there having any authority of an order lawfully issued by the Secretary of War connected with the movement or subsistence of troops, and without any authority therefor whatsoever, contrary to the form, force, and effect of the statutes of the United States in such case made and provided, and against the peace and dignity of the United States of America."

The second count was the same, except the date of the offense was alleged to be February 12, 1912, and the value of the cattle $6,000. There was a demurrer to the indictment, which being overruled, the following plea of nolo contendere was entered:

"Now, on this the 2d day of September, A. D. 1914, the United States district attorney and the above-named defendant, Albert Fisher, with his counsel, came into court, and this being the day fixed by the court for pronouncing judgment upon the charge of unlawfully removing certain cattle from the Pine Ridge Indian reservation, in said district, without the authority of an order of the Secretary of War, in connection with the movement or subsistence of troops, and without any authority whatsoever, said defendant having confessed that he did at the various times stated in the several counts of said indictment, remove from said Pine Ridge Indian reservation, in said district, certain cattle, the same being then and there chattels and personal property of him, the said Albert Fisher, for the purpose of trade and commerce, and without then and there having the authority of an order lawfully issued by the Secretary of War in connection with the movement or subsistence of troops, but alleging that he was lawfully in possession of said cattle, and that the necessary and lawful authority or permit for the sale of said cattle had been issued by the superintendent of said Pine Ridge Indian reservation, or his subordinates upon said Pine Ridge Indian reservation, but still contending that he is not guilty as a matter of law, to the offense charged in said indictment, for the reason that the same charges no offense against the laws of the, United States, but not wishing to contest the allegations of fact stated and set forth in said indictment."

Upon this plea which was not traversed, Fisher was sentenced to pay a fine of $500 and costs on each count. The indictment was drawn upon section 2138, R. S. U. S. (Comp. St. 1913, § 4136), which reads as follows:

"Every person who drives or removes, except by authority of an order lawfully issued by the Secretary of War, connected with the movement or subsistence of troops, any cattle, horses, or other stock from the Indian country for the purposes of trade or commerce, shall be punishable by imprisonment for not more than three years, or by a fine of not more than $5,000.00 or both."

[1] The language of the foregoing section appeared in sections 8 and 9 of the act of March 3, 1865 (13 Stat. 563, c. 127). These sections read as follows:

"Sec. 8. And be it further enacted, that any person who may drive or remove, except as hereinafter provided, any cattle, horses, or other stock from Indian territory for the purpose of trade or commerce shall be guilty of a felony, and on conviction be punished by a fine not exceeding $5,000, or by imprisonment not exceeding three years, or by both such fine and imprisonment.

"Sec. 9. And be it further enacted, that the agent of each tribe of Indians, lawfully residing in said Indian territory, be, and he is hereby, authorized to sell for the benefit of said Indians, any cattle, horses or other live stock belonging to such Indians, and not required for their use or subsistence, un-

der such regulations as shall be established by the Secretary of the Interior: Provided, that nothing in this or the preceding section shall interfere with the execution of any order lawfully issued by the Secretary of War connected with the movement or subsistence of the troops of the United States."

When the sections were brought into the Revised Statutes as section 2127 and section 2138 (Comp. St. 1913, §§ 4120, 4136), the words "Indian territory" were changed to "Indian country." We apprehend, however, that the words "territory" and "country" were used as meaning the same district or country. We do not think it is necessary to determine the exact purpose of the enactment of this legislation by Congress. It is well known that at the time of the passage of the act of March 3, 1865, there were large herds of cattle and horses in the Indian country. In some cases they belonged to individual Indians, and in other cases to Indian tribes, and in some instances were wild and had no owner. The obligation assumed by the United States to care for the Indians, who had been rendered unable to provide for their own livelihood by reason of the encroachment of the white man upon their lands, made such legislation reasonable and necessary for the purpose of conserving all stock in the Indian country. It was provided that the law should not apply in cases where the Secretary of War had authorized the driving of cattle or horses from the Indian country in connection with the movement or subsistence of troops. We are of the opinion that by subsequent legislation it is now lawful in certain cases for individuals to drive cattle from the Indian country without having a permit from the Secretary of War as required by the statute. By Act Cong. July 4, 1884, c. 180, 23 Stat. 94, it is provided:

"*(Sale of Cattle of Indians to Persons Not Members of Same Tribe Prohibited.)* That where Indians are in possession or control of cattle or their increase which have been purchased by the government such cattle shall not be sold to any person not a member of the tribe to which the owners of the cattle belong or to any citizen of the United States whether intermarried with the Indians or not except with the consent in writing of the agent of the tribe to which the owner or possessor of the cattle belongs. And all sales made in violation of this provision shall be void and the offending purchaser on conviction thereof shall be fined not less than five hundred dollars and imprisoned not less than six months."

It does not appear from the record whether Fisher was an Indian subject to the control of an Indian agent, except as we may infer that fact from the statement, in the plea of nolo contendere, that the necessary and lawful authority or permit for the sale of said cattle had been issued by the superintendent of said Pine Ridge Indian reservation or his subordinates. This allegation, not being traversed, must be accepted as true. We must assume, therefore, that Fisher had the written consent of the agent of his tribe to sell the cattle which he was driving from the reservation. If he did, he could sell the cattle to any person, either on or off the reservation, and, having a right to so sell, he had the right to deliver, either on or off the reservation. We therefore are of the opinion that the defendant could not be punished for driving his own cattle from the Indian country, which he had obtained a permit to sell. In so deciding, we in no wise interfere with the power of the United States to prevent cattle owned by Indians

from being driven from the reservation. We simply hold that, if the agent of the tribe decides to give his consent that an Indian may sell his cattle, he thereby authorizes the Indian to which such consent is given to drive the cattle from the reservation, and as this power to consent to sell is given by a law of Congress it results that there is under certain circumstances a power to permit cattle to be driven from the Indian country other than that of the Secretary of War.

The judgment below is reversed, and the defendant discharged.

### On Motion for Rehearing.

[2] The point is made that Act Cong. July 4, 1884, c. 180 (23 Stat. 94), was repealed by Act March 2, 1889, c. 405, § 17 (25 Stat. 895), in so far as the former act permitted the sale of "issue cattle" with the consent in writing of the agent of the tribe to which the owner or possessor of the cattle belonged. This position was not suggested at the hearing of the case, either in brief or oral argument.

Conceding that Act March 2, 1889, as to any personal property issued under said act, has the effect contended for, it by no means follows that our former judgment is erroneous. The act of 1884, quoted in our former opinion, assumed that there were cattle in the possession or control of Indians which had been purchased by the government. It is still in force as to cattle and other personal property not issued under Act March 2, 1889. It is admitted upon the record that the defendant, Fisher, had the necessary and lawful authority or permit for the sale of the cattle which he was removing from the Indian country, issued by the superintendent of the Pine Ridge Indian reservation or his subordinates.

[3] We are asked in the petition for rehearing to take judicial notice of the fact that the cattle in controversy were issued to Fisher under Act March 2, 1889, for the purpose of avoiding the force or effect of the written consent of the superintendent of the Pine Ridge Indian agency. It must not be forgotten that this is a criminal case, where the presumptions, if any, must be in favor of the accused. We do not know judicially, or in any other manner, that the cattle which Fisher removed from the Indian country were issued under Act March 2, 1889. This would be a fact to be shown by evidence, and as the prosecution had full opportunity to show all the facts, it cannot now ask us to take judicial notice of that which should have been proven by evidence, if such evidence existed. Moreover, we would be obliged to presume that the Indian superintendent deliberately violated the law in issuing the permit, which we cannot do, as the presumption would be that he obeyed the law.

We see no reason for granting a rehearing, and the petition is therefore denied.